(134 App. Div. 533.)

PEOPLE ex rel. FELLMAN v. METZ, City Comptroller, et al.

(Supreme Court, Appellate Division, First Department. November 19, 1909.)

MUNICIPAL CORPORATIONS (§ 518*) — LOCAL IMPROVEMENTS — ASSESSMENTS — INTEREST.

Consolidation Act (Laws 1882, p. 252, c. 410) § 920, provides that assessments for improvements in certain territory shall be payable in yearly installments of five per cent. of the whole amount of such assessments, together with 7 per cent. interest on the whole amount unpaid in any year, etc., and that the whole of such assessments and all interest due thereon may be paid at any time. *Held*, that said section does not require 20 different assessments, or insertion thereof in any tax roll, but simply grants the property owner the privilege of dividing his payments into 20 different parts, with payment of interest on the full amount unpaid, and that the assessments of one failing to avail himself of such privilege bear 7 per cent. interest until paid, as provided by preceding sections of the act.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1218; Dec. Dig. § 518.*]

Appeal from Special Term, New York County.

Petition by the People of the State of New York, on the relation of Anna Fellman, for writ of mandamus against Herman A. Metz, as Comptroller of the City of New York, and another. From an order denying the writ, relator appeals. Affirmed.

Argued before INGRAHAM, McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Joseph Wamsley, for appellant.

Francis H. Pendleton, Corp. Counsel (William H. King, of counsel), for respondents.

CLARKE, J. This is an appeal from an order of the Special Term denying a motion for a peremptory writ of mandamus commanding the comptroller and the collector of assessments to accept the aggregate amount of certain assessments for local improvements on certain lots of the appellant in the twelfth ward, north of 155th street, in the borough of Manhattan, without interest, viz., the sum of $3,283.58, in full payment and satisfaction of said assessments, to cancel of record the lien caused by the entry of said assessments in the record of titles of assessments confirmed in the office of said collector, and to strike said assessments from the particular and detailed statement of property affected, and the tax liens thereon, which are now advertised to be sold, and to refrain from further advertising for sale, or selling, the lien of said assessments under said notices.

These assessments were laid for various local improvements from 1891 to 1897. The petition sets forth the dates of confirmation of each assessment, and alleges that each of the foregoing assessments on said

lots remains wholly unpaid; that by the direction of the comptroller the collector of assessments and arrears has published once in each week, successively, a notice requiring payment of said assessments on said lots, and that in case default should be made in the payment thereof that the lien of any and all of said assessments upon said lots remaining unpaid would be sold at public auction in the aldermanic chamber in City Hall, in said borough, on a date fixed, under and pursuant to the provisions of title 5 of chapter 17 of the Greater New York charter (Laws 1901, p. 432, c. 466); that no part or installment of any of said assessments, and no interest thereon, has at any time been levied with any of the taxes levied on said lots, or any of them, for any said year or years, or included in the annual tax or assessment rolls for any year or years, to the receiver of taxes for the collection of taxes as there imposed on real estate; that said receiver has never given any notice respecting the payment or collection of any of said assessments, or of any part or installment thereof, or of any interest thereon; that the said collector never made any attempt to collect any of said assessments, or any part or installment or interest thereon, in connection with the annual taxes on said lots, and that said relator has duly tendered to said collector and comptroller payment of the principal of each of said assessments on said lots, without interest, and that they have declined said tender; that said collector and comptroller require the payment of the whole of each assessment on said lots, with interest from the date of entry to the date of payment.

At the time of the confirmation of the assessments in the matter at bar, the consolidation act (chapter 410 of the Laws of 1882) was in force. Section 915 (page 251) thereof provides that:

"All taxes and all assessments for city improvements, and all regular Croton water rents, and the interest and charges thereon, which may be laid, or have heretofore been laid, upon any real estate in the city and county of New York, shall be and continue to be, until paid, a lien thereon, and shall be preferred in payment to all other charges. No assessment for any city improvement shall be deemed to be fully confirmed, so as to be due and be a lien upon the property included in the assessment, until the title thereof, with the date of confirmation by the Supreme Court, or by a board of revision and correction of assessments, as the case may be, shall be with the date of such entry, in a record of titles of assessments confirmed, to be kept in the office of the bureau of the clerk of arrears."

Section 916, as amended by section 1, c. 183, p. 310, Laws 1893, provides that:

"It shall be the duty of the comptroller to give public notice by advertisement for at least ten days in the City Record, immediately after the confirmation of any assessment for local improvement and street or park opening, that the same has been confirmed, specifying the title of such assessment, and the date of its confirmation  *  *  *  and also the date of entry in the record of titles of assessments kept in the bureau for the collection of assessments and of arrears of taxes and assessments and of Croton water rents, specifying also the ward or wards in which the improvement is situated and the arrear of assessments, and notifying all persons and owners of property affected by any such assessment that, unless the amount assessed for benefit on any person or property shall be paid within sixty days after the date of said entry of any such assessment, interest shall thereafter be collected thereon as provided in the following section."

The section also provides for a brief notice in the newspapers designate i annually by the mayor, corporation counsel, and commissioner of pu lic works under section 66 of the consolidation act, and conclude: :

"A] provisions of law or ordinances requiring any other or different notice of s<sub></sub> .h assessments and interest thereof are hereby repealed."

'>ection 917 provides that:

"If any such assessment shall remain unpaid for the period of sixty days .fter the date of entry thereof in the said records of titles of assessments, it shall be the duty of the officer authorized to collect and receive the amount of such assessment, to charge, collect, and receive interest thereon, at the rate of seven per centum per annum, to be calculated from the date of such entry to the date of payment."

Section 918 provides that:

"Interest shall hereafter be charged and collected at the rate of seven per cent. per annum on all arrears of taxes and assessments returned to the clerk of arrears from the time they became due until the date of payment. * * * * "

So that it appears that the amount of the assessments for these improvements became a lien upon the property upon the confirmation and the entry thereof in the record of titles of assessments confirmed in the office of the clerk of the bureau of arrears, and the only notice required was that given by the comptroller by advertisement in the City Record and the corporation papers, and that 60 days after the date of such entry interest would be collectible thereon at 7 per cent. until the date of payment. The dates of confirmation of these assessments in the matter at bar are alleged in the petition. There is no allegation that the notice required to be published immediately after confirmation, which was the only notice of such assessments required by the comptroller, as provided in section 916 of the consolidation act, supra, was not made. Therefore it must be assumed, in a proceeding for a peremptory writ of mandamus, that such assessments were duly laid, confirmed, and notice thereof given, and that interest began to run 60 days thereafter; and if there were no other provision of the statutes it would be now apparent that the amount of these assessments with seven per cent. interest is due.

Section 926 provides that:

"Whenever any tax on lands or tenements, or any assessments on lands or tenements for city improvements, shall remain unpaid for the term of three years from the time the same shall have been confirmed, * * * it shall and may be lawful for the clerk of arrears, under the direction of the comptroller, to advertise the said lands and tenements or any of them for sale, and by such advertisement the owner or owners of such lands and tenements respectively shall be required to pay the amount of such tax, assessment or Croton water rents so remaining unpaid, together with the interest thereon at the rate of seven per cent. per annum to the time of payment, with the charges of such notice and advertisement, to the clerk of arrears, and notice shall be given by such advertisement that if default shall be made in such payment such lands and tenements will be sold at public auction at a day and place therein to be specified. * * * "

Section 1027 of the Revised Charter (chapter 466, p. 437, Laws 1901, as amended by section 13, c. 490, p. 1726, Laws 1908) substantially re-enacts the foregoing section of the consolidation act, with the

exception that, instead of selling the lands and tenements for the lowest term of years at which any person or persons shall offer to take the same in consideration of advancing the said tax or assessment or Croton water rates, as the case may be, and the interest thereon, it is now provided that:

"The right of the city to receive taxes, assessments and water rates and the lien thereof, may be sold by the city."

"The right and lien so sold shall be called 'tax lien' and the instrument by which it is assigned shall be called 'transfer tax lien.'"

The relator excludes from consideration the statutory provisions hereinbefore cited, and bases her claim exclusively upon the provisions of section 920 of the consolidation act, which is as follows:

"The assessment for benefit in all proceedings pending on the 16th day of June, 1881, or thereafter commenced or to be commenced to acquire title to lands in the Twelfth ward, north of 155th street, and the Twenty-Third and Twenty-Fourth wards, for a street, avenue or public place, or for the opening or widening thereof, and all assessments levied for grading, regulating, paving, and sewers in said territory, and all assessments heretofore levied therein for any of said purposes, shall be payable in yearly installments of five per centum of the whole amount of each of such assessments, together with seven per centum interest on the whole amount unpaid in any year, which yearly installment and interest shall be levied and collected with the annual taxes upon the property so assessed, and payment thereof enforced in the same manner as such taxes and with the same penalties. Any person whose property is assessed for any of the purposes specified in this section may pay the whole of such assessments and all the interests due thereon at any time. The amounts assessed each year upon the several parcels of land assessed for any of the aforesaid purposes and all arrears so assessed shall, as between vendor and vendee, or upon a judicial sale thereof, be deemed the amount due on such assessment upon each parcel, unless otherwise expressed in writing between the parties. The said comptroller is directed, upon the application of any owner of any part of a parcel embraced in a single assessment, to apportion the amount to be assessed against such part and the remainder of such parcel and payment of the sum so apportioned of the yearly portion thereof provided for in this section shall discharge such part from the lien of said assessment."

The relator claims that under said section nothing can be collected by way of interest, because the yearly installment of 5 per cent. was never entered in the tax roll and levied and collected with the annual taxes upon the property so assessed. I think it has been settled conclusively by the decisions of the General Term in People ex rel. Martin v. Gilon, 60 Hun, 577, 14 N. Y. Supp. 75, appeal dismissed 128 N. Y. 651, 29 N. E. 148, and in Matter of 181st Street, 63 Hun, 629, 17 N. Y. Supp. 917, that the provisions of this section do not contemplate or require 20 different assessments or insertion thereof in any tax roll, but that there was one assessment levied by the confirmation and the entry thereof, which established the lien, and that all that was provided was an opportunity, a privilege, to the property holder, to divide his payments, if he so desired, into 20 different parts, with payment of interest on the full amount unpaid, and that he could pay said part at the time provided for the payment of taxes. As Mr. Justice Van Brunt said in the last case cited:

"Any other construction of the act would require annually the levying of new assessments, thus complicating the proceeding to an indefinite degree.

The object of the act was to give the owner, upon the payment of interest, annually an extension of time for the payment of the principal and nothing more. There is no intention manifested in the statute that the lien of the assessment as it had heretofore existed should be in any way changed."

It therefore seems to me that, inasmuch as during all this period of years the owner has not availed herself of this privilege, the provisions of the preceding sections of the consolidation act apply, and the assessments bear 7 per cent. interest down to the time when paid. It was expressly provided in section 920 that:

"Any person whose property is assessed for any of the purposes specified in this section may pay the whole of such assessments and all the interest due thereon at any time."

Relator has come in with an offer of the bare principal, and demands a peremptory writ of mandamus to force the comptroller to accept it. As she has not taken advantage of the provisions of section 920, and as that section in no way affected the preceding sections, unless the property holder did take advantage of it, the denial of the peremptory writ of mandamus was clearly required.

The order appealed from should be affirmed, with $10 costs and disbursements. All concur.